IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 15-CR-434 MV |
| ) | |
| **JULIAN CONCHA**, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE (DOC. 32)**

The United States submits this response in opposition to Defendant Julian Concha's motion to modify his conditions of release pending sentencing. *See* Doc. 32. Defendant's current conditions of release constitute the "least restrictive . . . combination of conditions . . . [that] will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(c). Defendant's current conditions of release, which were carefully crafted and reconsidered by Federal Magistrate Judge Kirtan Khalsa and then continued by Federal Magistrate Judge Steven Yarbrough, are the source of Defendant's success, not his stumbling block, and should not be modified prior to Defendant's sentencing.

Though relatively young, Defendant has a long criminal history in the tribal court system, replete with failures to appear and probation violations.[1] In fact, nearly every year of his adult

---

[1] Defendant has amassed a lengthy tribal criminal history at Taos Pueblo. Of his six definitive prior convictions at the Pueblo, four involved domestic violence. *See, e.g.*, Taos Pueblo v. Concha, No. CR12-0194, 195 (Taos Pueblo Tribal Ct. Aug. 6, 2012) (Domestic violence against cousin Violet Romero) ("An attempt to commit a battery against a household member, To Wit: Violet Romero"); Taos Pueblo v. Concha, No. DV12-0003 (Taos Pueblo Tribal Ct. Feb. 22,

1

life, Defendant has had contact with the criminal justice system.  The unfortunate hallmark of his record is that the tribal justice system appears to have rewarded his increasingly egregious conduct with scores of deferred sentences, dismissals and poorly supervised terms of probation.[2] In short, Defendant has never had to face real consequences for his actions; until now.

      Defendant was arrested on an indictment filed in this case on February 10, 2015.  This Court ordered Defendant be placed in the custody of La Pasada Halfway House under a "zero tolerance policy" and enrolled in the "most intensive alcohol treatment available."  Doc. 12 (Order Setting Conditions of Release).  The probation office's non-opposition to Defendant's current motion speaks of his success over the last eight months.  But eight months of success in a strictly monitored environment does not justify releasing Defendant to his girlfriend Andrea Bluearm's custody in the face of seven years of violent criminal history and noncompliance, some of which involved violence against that same girlfriend.

      As this Court learned through Defendant's first contested motion to modify his conditions of release before Judge Khalsa, Defendant's girlfriend has been the unfortunate target of Defendant' alcohol-fueled violence.  *See* Doc. 16-1, at Bates 267, *Taos Pueblo v. Concha*, No. DV11-022, 023 (Taos Pueblo Tribal Ct. Oct. 15, 2011) (police report) ("…Julian and his girlfriend Andrea Bluearm were in the kitchen drinking beer and arguing with each other[.]"); Doc. 16-2, at Bates 274, *Taos Pueblo v. Concha*, No. CR11-0212, 0213 (Taos Pueblo Tribal Ct. June 29, 2011) (police report) ("Heard Julian and Andrea his granddaughter arguing inside [of] the house"); and Doc. 16-3, at Bates 241, *Taos Pueblo v. Concha*, No. CR13-0024, 0025 (Taos

---

2012) (Domestic violence against brother Adam Concha) ("The Defendant hit his brother (Adam Concha) several times[.]").

[2] Concha has failed to respond to tribal intervention.  In addition to his convictions for violence, he was convicted there of escape from custody, failure to appear, and performed poorly during a series of probationary terms at the pueblo.  *See, e.g.*, *Taos Pueblo v. Concha*, No. DV12-003 (Taos Pueblo Tribal Ct. Dec. 12, 2013) (Order on Probation Violation Hearing).

Pueblo Tribal Ct. Jan. 22, 2013) (Domestic violence against Rebecca Jiron, Querino Montoya and Andrea Bluearm) (An attempt to commit a battery against a household member[,] . . . Andrea Blue Arm").

Analysis of the Defendant's criminal record, including this federal case, reveals a clear pattern of criminal conduct: Defendant abuses alcohol then fights (verbally and physically) with his girlfriend at an elder's house, and when the elder confronts him, Defendant unleashes his anger and violence upon the defenseless elder. In this case, Defendant has pleaded guilty to severely beating his girlfriend's mother and her boyfriend. The incident involved his girlfriend and left his girlfriend's mother with a fractured orbital, detached retina and protracted loss of vision.

Among Defendant's prior victims is his own grandmother, Rosarita Mondragon (Lujan), who gave the following account to Taos Pueblo Police:

> "That I was asleep, that Julian and his girlfriend Andrea Bluearm were in the kitchen drinking beer and arguing with each other's" [sic]
>
> Rosarita said "That she got up and went into the kitchen, told them to be quite [sic] and go to bed". Rosarita said that Andrea left the residence right away, and Julian told her to mind her own business". "Pushing her down". Rosarita said "Julian pushed at her with both hands on her chest to where she fell backward onto a wood bench landing on her back."

Doc. 16-1, at Bates 267. According to Defendant's grandmother, he returned after the incident and "told her that she was not a good grandmother, called her a 'Whore and spit in her face and told her that he was going to kill her in the morning.'" *Id.* Another of his victims is his girlfriend's grandfather, Sam Jiron, who gave the following account of Defendant's violence against him to Taos Pueblo Police:

> "That [Sam Jiron] was asleep in his bedroom", "Heard Julian and Andrea his granddaughter arguing inside off [sic] the house". Sam said "He got up to see what was going on and found them outside in the back yard arguing". Sam Said

3

[sic] "Julian then pushes me from behind my back to where I landed against a wall", "Hitting my right elbow causing it to bleed", "Then I fell to the ground".

Doc. 16-2, at Bates 274.

The United States doubts that in a mere eight months Defendant has mastered his alcohol addiction and violent temper. It is clear he has made progress and the United States applauds those efforts. But given Defendant's long-standing record of violence, this Court can find no comfort in releasing Defendant to Andrea Bluearm, a woman who was unable to stop Defendant from beating her mother sightless, beating her grandfather and beating his own grandmother, and who has herself been the subject of Defendant's violence. Should Defendant slip into his old patterns, how is Ms. Bluearm supposed to protect herself or her defenseless infant child? Ms. Bluearm and her child's need for a slight increase in Defendant's monthly contribution is not a good exchange for their safety. And there are no conditions of release at this time—outside La Pasada Halfway House—that can reasonably assure the safety of Ms. Bluearm, her child, and the community.

And lastly, Defendant has an incentive to flee at this time that will only grow if released to his girlfriend's custody. In addition to the fact that Defendant fled with his girlfriend to Colorado in the aftermath of the underlying federal crime to evade law enforcement, Defendant is now facing 37 months of federal prison time under his current 11(c)1(C) plea agreement, as well as a November trial in *State v. Concha*, D-101-CR-201500148 (1st Jud. Dist. Ct. March 13, 2015) for felony aggravated assault with a deadly weapon and misdemeanor criminal damage to property. Defendant's current conditions of release allow Defendant to maintain his relationship with his girlfriend, build a relationship with his infant child, contribute to them financially, while assuring Defendant's appearance at all phases of this criminal case.

*Conclusion*

The United States opposes Defendant's request for modified pre-sentence conditions for the same reason it opposed his request for modified pre-trial conditions: Defendant is a flight risk and poses a danger to the community. Pursuant to 18 U.S.C § 3142(g), the Court's analysis on the relevant factors continue to weigh in favor of maintaining the terms of release imposed by this Court just two months ago. Defendant's current conditions of release are the least restrictive means of assuring his appearance at sentencing and the safety of the community. For all of the reasons outlined in this response, the United States opposes Defendant's motion to modify his conditions of pre-sentence release.

        Respectfully submitted,

        DAMON P. MARTINEZ
        United States Attorney

        /s/
        KRISTOPHER N. HOUGHTON
        Assistant U.S. Attorney
        201 Third St. NW, Suite 900
        Albuquerque, NM 87102
        (505) 346-7274
        (505) 346-7296 fax

I hereby certify that a copy of this motion was delivered via CM/ECF to counsel for defendant on October 19, 2015.

*filed electronically*
Kristopher N. Houghton